**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

DONALD JOHNSON, an individual,   )
                                 )
            Plaintiff,           )
                                 )
      v.                         )     No. CIV-11-306-FHS
                                 )
UNUM GROUP, a foreign for        )
business corporation; and UNUM   )
LIFE INSURANCE COMPANY OF        )
AMERICA, a foreign corporation,  )
                                 )
            Defendants.          )

<u>**ORDER**</u>

    Before the court for its consideration is a request by the plaintiff to vacate the decision by UNUM to terminate plaintiff's benefits.  Plaintiff's claims are governed by the Employee Retirement Income Security Act of 1974 (ERISA).

<u>**Facts**</u>

    In 2002, plaintiff suffered an on-the-job injury to a previously injured and repaired left shoulder.  As a result of his injury, plaintiff was eligible for coverage under a Weyerhaeuser group policy which provided for benefits for twelve months if a claimant was unable to perform the material and substantial duties of his or her regular occupation due to sickness or injury.  After twelve months, a claimant would only receive benefits if he was unable to safely and completely perform two activities of daily living (ADL).  The policy provides:

1

> You will continue to receive payments beyond 12 months if...you are unable to safely and completely perform 2 activities of daily living without another person's assistance or verbal cueing...To be considered disabled under the plan after 12 months of payments, you must lose 2 or more activities of daily living or became cognitively impaired while you are covered under the plan.
>
> Activities of Daily Living mean:
>
> 1. Bathing-washing yourself either in the tub or shower or by sponge bath, with or without equipment or adaptive devices.
> 2. Dressing-putting on and taking off all garments, and medically necessary braces or artificial limbs usually worn, and fastening or unfastening them.
> 3. Toileting-getting to and from and on and off the toilet, maintaining a reasonable level of personal hygiene, and caring for clothing.
> 4. Transferring-moving in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices.
> 5. Continence-voluntarily controlling bowel and bladder function; or in the event of incontinence, maintaining a reasonable level of personal hygiene.
> 6. Eating-getting nourishment into your body by any means once it has been prepared and made available to you.

Initially, after the accident plaintiff lost all use of his left shoulder. As a result, UNUM paid benefits to plaintiff from 2002 to 2010 under the one year occupation provision and subsequently under the catastrophic disability provision.

On October 29, 2009, UNUM conducted a round-table review of plaintiff's case. Four UNUM employees, the disability benefits specialist handling the claim, her manager, a vocation rehabilitation consultant, and a clinical consultant assessed plaintiff's claim. The group concluded that it was unclear why plaintiff would have suffered a loss of ability to perform two or more activities of daily living. The round table did not

determine plaintiff was not disabled, but rather that plaintiff's claim would be subject to further review.

On December 2, 2009, G4S Investigations, a company wholly independent of UNUM, conducted a field interview with plaintiff. The field representative asked plaintiff a number of questions. Plaintiff specifically stated that "he has only the restriction and/or limitations of not using the left arm." The reports also documented plaintiff's responses regarding his ability to perform basic functions.

> (a) Walking/Sitting.  He can walk as much as he wants and gets most of his exercise this way.  His shoulder does start to hurt after long periods of walking due to his arm just hanging and if he puts it in a sling, he has to be careful of the movement from walking. The claimant advised in regard to sitting that how long he is able to sit is dependent upon his symptoms that day.
> (b) Transferring from bed to chair. The Claimant stated that he can do this independently due to his bed raising and lowering (mechanical bed).
> ( c) Toilet use. The Claimant states that he can do this independently.
> (d) Bathing. The Claimant stated that he can perform this independently.
> (e) Dressing. The Claimant stated that he can do this independently as long as he wears loose clothing with no button that uses both hands.
> (f) Personal Hygiene. The Claimant stated that he can do this independently.
> (g) Preparing and eating meals. The Claimant stated that he can do this independently using his right hand.

On March 11, 2010, plaintiff underwent a series of tests with Dr. Donald E. Adams, generally focused on determining whether he had carpal tunnel syndrome in his left hand. As part of his electrodiagnostic testing,  Dr. Adams conducted a detailed examination of plaintiff's upper extremities.  He noted:

> Manual motoring testing reveals 5/5 strength through bilateral upper extremities except with weakness with

3

> thumb abduction. Muscle stretch reflexes are 2 + at the biceps, triceps, and brachioradialis regions. Sensory exam is intact to light touch and pin prick throughout.

On March 24, 2010, UNUM received a response from Dr. Conway, plaintiff's orthopedic surgeon, indicating plaintiff has no limitations on his activities of daily living.

On June 8, 2010, the UNUM disability benefits specialist had a telephone call with plaintiff. Plaintiff explained that he had received paperwork from Dr. Gomez, who had been his family physician for three months and saw plaintiff only for blood pressure and cholesterol issues.  The UNUM disability specialist informed plaintiff that Dr. Gomez could defer to the evaluation of another physician.  As a result, Dr. Gomez responded to UNUM's request shortly thereafter, stating plaintiff was unable to perform four activities of daily living "as per Conway recommendations date on 6/14/10."

On June 14, 2010, an evaluation from Dr. Conway was submitted to UNUM for review.  It was in stark contrast to his March 24, 2010, evaluation where he indicated plaintiff could perform all activities of daily living.  The June 14, 2010, evaluation stated plaintiff was unable to perform four such activities, including bathing, dressing, eating and toileting. Dr. Conway offered no explanation for the change in his opinion.

On June 29, 2010, Sharon Davenport, a registered nurse and the assigned UNUM clinical consultant, completed a review of plaintiff's claim, including the conflicting information provided by Dr. Conway.  She repeated the process on July 26, 2010, after receiving additional medical records from Dr. Conway.  After her review, which specifically noted the conflicting information from

Dr. Conway, she requested that a physician review the file to determine whether plaintiff was unable to perform two or more activities of daily living. On August 10, 2010, Dr. Larry LaClair responded to her request, indicating that he would probably need to contact Dr. Conway directly.

Dr. LaClair made a call to Dr. Conway's office on August 24, 2010, but was only able to leave a message. He then obtained Dr. Conway's facsimile number and sent a letter requesting additional information. Dr. Conway initially responded the next day without explanation of why plaintiff was unable to perform any activities of daily living. As a result, Dr. LaClair again called Dr. Conway's office, leaving a voice mail explaining the initial response provided no medical explanation whatsoever of why plaintiff was unable to perform any activities of daily living. As a result, Dr. LaClair again called Dr. Conway's office, leaving a voice mail explaining the initial response provided no medical explanation for Dr. Conway's conclusions and drastic change of opinion.

On August 27, 2010, Dr. Conway provided his follow up response, which only provided that plaintiff was limited as a result of loss of range of motion and weakness in the left upper extremity. Dr. LaClair rightly noted that Dr. Conway's additional information did not address plaintiff's ability to perform the activities of daily living with his right-hand. As a result, a full physician review needed to be conducted.

Dr. LaClair subsequently conducted the full review on September 17, 2010. Dr. LaClair conducted a thorough review of plaintiff's medical records. He noted the restrictions and limitation noted by plaintiff's physicians. He then completed a

detailed review of plaintiff's medical records and addressed the restrictions and limitations provided by plaintiff's physicians. He concluded their opinions were not supported. Among other factors, Dr. LaClair noted both plaintiff and Dr. Conway had provided inconsistent responses regarding plaintiff's ability to perform activities of daily living. He also noted that there were no contemporaneously prepared office records from 2009 and 2010 that indicated he could not use his right upper extremity to perform such tasks. As a result, Dr. LaClair concluded the medical records did not support plaintiff's inability to perform activities of daily living, using his dominate right upper extremity.

Since there was a disagreement between Dr. LaClair and Dr. Conway, Dr. LaClair referred the claim to Dr. John Groves, the designated medical officer (a board certified surgeon), for further review. On September 25, 2010, Dr. Groves determined that plaintiff was not prevented from carrying out the activities of daily living. Dr. Groves wrote:

> The basis for change of restrictions and limitations for activities of daily living given by Dr. Conway, 3/24/10, (no restriction on activities of daily living) and the 6/14/10 questionnaire indicating assistance for performing bathing, dressing, eating, and toileting is not supported by the records. The exam by Dr. Adams, 3/11/10, and the subsequent follow-up do not document any worsening of the insured's condition. Dr. Gomez had deferred to the opinion of Dr. Conway for ADLs.

Dr. Groves concluded: "The records support a normal right upper extremity, which would be available for assistance in activities of daily living".

On September 30, 2010, UNUM terminated plaintiff's benefit.

UNUM received plaintiff's appeal on October 22, 2010.  The UNUM appeals specialist referred the claim to Dr. Robert A. Hill for a written doctoral review.  On September 22, 2010, Dr. Hill completed his review of plaintiff's claim.  As Drs. LaClair and Groves had previously concluded, Dr. Hill found that Dr. Conway's restrictions and limitations were not supported: "Although medical records indicate minimal use of the left upper extremity, the medical records do not describe inability to use the right upper extremity." Dr. Hill concluded, "It is my opinion within a reasonable degree of medical certainty that the medical records do not describe a condition that would prevent Mr. Johnson from performing the ADLs indicated." As a result, plaintiff's appeal was denied on December 3, 2010.

On February 28, 2011, UNUM received a second appeal of plaintiff's claim.  Because very few additional records were received, the claims was again submitted for physician review.  Dr. Thomas E. Moses, another orthopedic surgeon, completed the fourth physician review of plaintiff's claim on March 21, 2011.  After a comprehensive analysis of plaintiff's records, Dr. Moses concluded plaintiff "has not lost the ability to safely and completely perform 2 ADLs as of 9/12/10."  On May 4, 2011, UNUM denied plaintiff's second appeal.

<u>Standard</u>

Plaintiff's policy provides "When making a benefits determination under the policy, UNUM has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy."  The policy also provides:

> In exercising its discretionary power under the Plan,

>     the Plan Administrator, and any designee (which shall
>     include UNUM as a claims fiduciary) will have the
>     broadest discretion permissible under ERISA and any
>     other applicable laws, and its decisions will
>     constitute final review of your claim by the Plan.
>     Benefits under this Plan will be paid only if the Plan
>     Administrator or its designee (including UNUM), decides
>     in its discretion that the applicant is entitled to
>     them.

The court must review UNUM's decision under the arbitrary and capricious standard. Firestone Tire and Life Insurance Company v. Bruch, 489 U.S. 101, 113-115 (1989). A decision is not arbitrary and capricious if supported by substantial evidence. Adamson v. UNUM Life Insurance Company America, 455 F.3d 1209, 1212 (10th Cir. 2006). Substantial evidence is defined as evidence "of the sort that a reasonable mind could accept as sufficient to support a conclusion". The decision does not even have to be a logical one. Id.  The court's review is "limited to the administrative record-the materials complied by the administrator in the course of making his decision." Hall v. UNUM Life Insurance Company of America, 300 F.3d 1197, 1201 (10th Cir. 2002). Because UNUM is both the administrator and payor of plaintiff's claim there exists an inherent conflict.  As a result, the court must look at a combination of factors to evaluate the decision.  The court is allowed to "take account of several different, often case-specific, factors, reaching a result by weighing all together". Metropolitan Life Insurance Company v. Glenn, 554 U.S. 105, (2008).

Plaintiff contends that UNUM should have required him to undergo an independent medical examination and that UNUM's reliance on its own physicians rather than such an independent medical examination or plaintiff's own physicians indicates UNUM's decision was arbitrary and capricious.  Finally, plaintiff

contends that there is a lack of substantial evidence for the decision to terminate benefits.

The court must look at all the factors UNUM considered when making the decision to terminate plaintiff's benefits.  First, UNUM was not required to conduct an independent medical examination.  Plaintiff cites the case of Fought v. UNUM Life Insurance Company of America, 379 F.3d 997 (10th Cir. 2004) to support its contention that UNUM should have conducted an independent medical examination.  Fought does not require an independent medical examination.  It merely suggests that an independent medical examination might be helpful.  Id. at 1015. After reviewing the facts of this case and the medical records submitted it appears that UNUM made repeated efforts to contact Dr. Conway to obtain additional information about plaintiff's condition.  UNUM tried to determine why Dr. Conway said at one point plaintiff could perform all activities of daily living and then reversed that determination and said plaintiff was not capable of performing any activities of daily living. Dr. Conway simply provided no explanation for the change of opinion. Even though UNUM tried to speak with Dr. Conway the only explanation Dr. Conway provided for his change of opinion was that plaintiff was unable to perform multiple activities of daily living related exclusively to his inability to use hie left upper extremity. Dr. Conway provided no explanation as to why plaintiff could not perform the daily activities of living with his right-hand. Four separate physicians have reached the identical conclusion that even in light of total inability to use his left arm, plaintiff can still carry out all the activities of daily living comprised of bathing, dressing, toileting, transferring, eating and maintaining continence, especially in light of the fact that plaintiff is right-handed. Plaintiff also stated as such when he

9

was interviewed about his ability to do daily activities.

UNUM is not required to afford any special deference to a treating physician. Nor does the Act impose a heightened burden of explanation on administrators when they reject a treating physician's opinion. <u>Black and Decker Disability Plan v. Nord</u>, 538 U.S. 822, 831 (2003) and <u>Basquez v. East Central Oklahoma Electric Co-operative, Inc.</u>, 2008 WL 906166 (E.D. Okla. March 31, 2008). However, UNUM tried multiple times to obtain an explanation from Dr. Conway as to why he indicated at one point plaintiff could perform all four activities of daily living and then made a reversal in his opinion without additional explanation. UNUM made repeated efforts to get an explanation as to how plaintiff's left shoulder injury prevents him from performing activities of daily living when he is right-handed. UNUM considered the opinion of plaintiff's treating physician and attempted to obtain additional information to better understand that opinion. After considering Dr. Conway's opinion and confirming that Dr. Gomez was completely deferring to Dr. Conway's opinion, UNUM determined, based on the conclusions of its own physicians, that plaintiff's inability to use his left shoulder did not prevent him from performing at least two of the enumerated activities of daily living.

The court finds the decision of UNUM is not arbitrary and capricious. The decision to terminate plaintiff's benefits was based on substantial evidence. The record fails to establish that plaintiff could not perform two activities of daily living as required by the policy for continuation of benefits. The policy is clear that payments will stop when a plaintiff "fails to submit proof of continuing disability". Under the provisions of the policy, plaintiff is required to provide documentation to

continue payment. Plaintiff simply failed to provide sufficient documentation of how his injured left shoulder affected his ability to do activities of daily living. There is no dispute that plaintiff lost almost all use of his left shoulder, but the physicians who reviewed his files indicated that this condition alone would not prevent him from completing the enumerated activities of daily living with his right hand. UNUM conducted a reasonable investigation into plaintiff's condition not only contacting his treating physicians but also having their own physician's review the medical records submitted. Under these factual circumstance, the court finds UNUM's decision to terminate benefits is not arbitrary and capricious.

Therefore, the Court denies Plaintiff's request to vacate the decision of UNUM to terminate plaintiff's benefits.

**IT IS SO ORDERED** this 17th day of December, 2012.

Frank H. Seay
United States District Judge